UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
LINDA OSBORN,

                    Plaintiff,                    Case No.

    -against-

                                                     <u>COMPLAINT</u>

NEW YORK CITY HEALTH HOSPITALS CORPORATION,
METRO PLUS HEALTH PLAN, INC. and THE CITY OF NEW
YORK,                                       <u>Jury Trial Demanded</u>

                    Defendants.
--------------------------------------------------------------------------------X

The Plaintiff LINDA OSBORN by and through her attorneys, BERLINGIERI LAW, PLLC, as and for her Complaint in this action against the Defendants NEW YORK CITY HEALTH HOSPITALS CORPORATION, METRO PLUS HEALTH PLAN, INC. and THE CITY OF NEW YORK respectfully alleges upon information and belief as follows:

## NATURE OF CASE

1.    This is a civil action for damages and equitable relief based upon willful violations that Defendant committed of Plaintiff's rights guaranteed to her by federal, state and city law, and complains for causes of action of: (i) discrimination based on disability under the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"); (ii) retaliation under the ADA; (iii) discrimination based on age under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as amended ("ADEA"); (iv) retaliation under ADEA; (v) for Violation under the First, Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. §1983; (vi) retaliation under 42 U.S.C. §1983; (vii) for Violation of the Equal Protection Clause under the Fifth and Fourteenth Amendment; (viii) Violation of the New York Constitution Art. I, Sec. 6 and 7, denial of due procedural and substantive due process; (ix) Violation of the New York Constitution Art. I, Sec.11, denial equal protection

1

under the law; (x) discrimination based on disability and age under, Article 15 of the Executive law the New York State Human Rights Law ("NYSHRL") § 296, *et seq.*; (xi) retaliation under NYSHRL; (xii) aiding and abetting discrimination under NYSHRL; (xiii) discrimination based on disability under the New York City Human Rights Law ("CHRL") § 8-107 *et seq.*, New York City Admin. Code, Ch. 1 - § 8-107; (xiv) retaliation under CHRL; (xv) aiding and abetting discrimination under CHRL; (xvi) interference with rights under CHRL.

Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

2.      Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction as this case involves a Federal Question under ADA 42 U.S.C. § 12101 *et seq.*, 29 U.S.C. § 621 *et seq.,* 42 U.S.C. § 1983, the Constitution of the United States, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under New York law and any and all state and local law pursuant to 28 U.S.C. §1367 (a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).  The acts and transactions complained of herein occurred in this District, Plaintiff resides and resided in this District during the course of her employment, and Defendant was and is located in this District.

6.      Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 11, 2022, against Defendants New York City Health and Hospital Corporation (NYC Health + Hospitals) and MetroPlus Health Plan, (EEOC No. 520-2022-03924).

7.      On or about April 11, 2022, Plaintiff duly filed a Notice of Claim with Defendants New York City Health and Hospital Corporation (NYC Health + Hospitals) and MetroPlus Health Plan, Inc. pursuant to NY Gen. Municipal Law.

8.      On August 8, 2022, Defendants New York City Health and Hospital Corporation (NYC Health + Hospitals) and MetroPlus Health Plan conducted an Examination pursuant to NY Gen. Municipal Law 50-h.

9.      On October 27, 2022, Plaintiff (via undersigned counsel) requested a Notice of Right to Sue from the EEOC in writing via email.

10.     Unbeknownst to Plaintiff or her counsel, on October 28, 2022, the EEOC, issued Plaintiff a Notice of Right to Sue via the EEOC Public Portal, (Plaintiff and her counsel did not have access to the EEOC Public Portal for this charge)[1] annexed hereto as **Exhibit A.**

11.     The date February 9, 2023 is the date of receipt of the Notice of Right to Sue letter for Plaintiff and her counsel because the EEOC did not send a copy to Plaintiff or her counsel and sent notification – for Plaintiff's counsel (Christopher J. Berlingieri) to a different email address for one of Plaintiff's counsel's other clients with an EEOC charge.[2]

12.     Plaintiff has exhausted all administrative remedies and prerequisites with the EEOC.

---

[1] On February 9, 2023, Plaintiff (via undersigned counsel) made a second request for the issuance of a Notice of Right to Sue from the EEOC in writing via email in good faith. On February 9, 2023, the EEOC supervisor sent Plaintiff's counsel the Notice of Right to Sue letter via email. T. Upon further investigation of the Notice of Right to Sue letter transmittal, Plaintiff diligently searched her email and found an automated email notification from October 31, 2022, from the EEOC notifying Plaintiff that a document uploaded to the portal, but Plaintiff could not access it, in this same email – the EEOC mistakenly cc'd a different client at a "@gmail.com" email account to another one of the Plaintiff's undersigned's counsel. Plaintiff's undersigned counsel followed up with said other client with the "@gmail.com" account and requested a copy of the mis-transmitted email regarding the October 31, 2022 notification regarding Plaintiff's EEOC charge. (Copies of EEOC emails are annexed hereto as Exhibit B).

[2] *See , Rivera v. Emerging Health Information Technology*, 10 CV 8522(VB) (S.D.N.Y. Nov. 7, 2011, Briccetti J.). "The triggering event for the ninety days [to file suit under Title VII, ADEA and ADA] is the receipt of the EEOC notice by the plaintiff, not the issuance of it by the EEOC. Courts presume that a plaintiff receives the notice three days after it is mailed, which is presumed to be the day it is issued; though this presumption may be rebutted by admissible evidence. *Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)."

13.     Plaintiff has satisfied all conditions precedent to commence this action by satisfying her Notice of Claim obligations pursuant to NY Gen. Municipal Law.

## THE PARTIES

14.     Plaintiff Linda Osborn was and is a resident of the State of New York and was a resident of the City of New York until June 2020, and is a current resident of the County of Westchester from June 2020 and at all relevant times herein resided in this District.

15.     Defendant New York City Health and Hospital Corporation (NYC Health + Hospitals) ("HHC") is an Agency of the City of New York, headquartered at 50 Water Street, New York, NY 10004.

16.     Upon information and belief, HHC operates the public hospitals and clinics in New York City as a public benefit corporation. As of 2021, HHC is the largest municipal healthcare system in the United States serving 1.4 million patients, including more than 475,000 uninsured city residents.

17.     Upon information and belief, Defendant HHC owns Defendant MetroPlus Health Plan which is one of the New York area's largest providers of government-sponsored health insurance and is the plan of choice for nearly half a million New Yorkers.

18.      Defendant MetroPlus Health Plan, Inc., is a  New York public benefit corporation that maintains a business address at 50 Water Street, New York, NY 10004.

19.     Defendant The City of New York is a municipal corporation formed under the laws of the State of New York, the New York City's Office of Corporation Counsel law department maintains an address at 100 Church St, New York, NY 10007.

20.     Defendant The City of New York funds, directs policies and operates HHC and Metro

Plus, as of June 30, 2022, HHC is the largest municipal healthcare system in the United States with $11.9 billion in annual revenues.[3]

21.     All defendants named above are collectively herein referenced as ("Defendants").

22.     Upon information and belief, at all times relevant to this Complaint, Defendants maintained more than (20) employees.

## BACKGROUND FACTS

23.     Plaintiff's disability is pericarditis and anxiety.

24.     Plaintiff's age is 73.

25.     Defendant HHC, Metro Plus and City of New York are employers under ADEA, ADA, NYSHRL, NYCHRL and  Sec. 1983.

26.     Plaintiff was an employee of Defendants.

27.     Plaintiff was a municipal public employee.

28.     Plaintiff worked for Defendants as a Deputy Director of Special Investigations Unit (SIU) from on or about September 15, 2015 until her wrongful termination on or about April 2, 2022.

29.     Prior to the COVID-19 pandemic, from 2015 – March 2020, Plaintiff exclusively worked at the Defendants' Water Street, workplace location.

30.     After the COVID-19 pandemic was declared in or around March 2020, Defendants permitted Plaintiff to work remotely from home. Plaintiff resided in New York City at the start of the pandemic, however by June 2020 Plaintiff moved to her home Westchester

---

[3] https://comptroller.nyc.gov/wp-content/uploads/documents/HHC-Financial-Statements-2022.pdf (Accessed February 17, 2023).

5

County and maintained a full time residency in Westchester County.

31.   In or around the fall of 2021, Defendants announced their vaccine mandate and sent notices to employees advising Plaintiff and other employees that the COVID-19 vaccine was required to continue employment with Defendants.

32.   Defendants vaccine mandate went into effect on November 1, 2021 as per the City of New York and mayoral executive order 75  and 76  required City employees to submit proof that they have received the primary series of the COVID-19 vaccine, per a series of Commissioner of Health Orders.

33.   On October 20, 2021, the Health Commissioner of the City of New York, David Chokshi, ("the Commissioner") issued an Order of the Commissioner of the Department of Health and Mental Hygiene (hereinafter "public employee vaccination mandate" or "Defendants' vaccine mandate").

34.   The vaccination mandate required all City employees to show proof of at least one dose of vaccination against Covid-19 by 5:00PM on October 29, 2021.

35.   Plaintiff remained unvaccinated and is currently unvaccinated.

36.   In or around September 30, 2021, Dr. Shah emailed Sean Mullen inquiring whether Plaintiff submitted a request for a reasonable accommodation.

37.   Mr. Mullen informed Plaintiff that she needed to submit documentation to Defendants EEO regarding an accommodation request, despite Dr. Sha and Mr. Mullen's prior approval of Plaintiff to work from home.

38.   Defendants then notified Plaintiff that her position was not permanently remote.

39.   Plaintiff was under the impression that she was already preapproved to work from home.

40. Plaintiff requested written confirmation from Ms. Kuar informed Plaintiff that she was neve o the EEO list and that HR was unaware of Plaintiff's approval from Mr. Mullen her department supervisor.

41. Plaintiff received harassing blast emails to get vaccinated through September 2021 – November 2021, prior to Plaintiff's Article 44 audit in December 2021.

42. Plaintiff was only required to go back into the office on a single day in December 2021, at the request of Defendants' Chief Compliance Officer, Raven Ryan-Solon when Plaintiff's department underwent an Article 44 audit.

43. As per Defendants' policies, Plaintiff was required to submit a negative PCR test to Defendants in order for her to enter the Defendants' building, Plaintiff submitted a negative PCR test prior to her one day of in person work in December 2021.

44. Plaintiff suffered from symptoms of her disabilities due (increased heart rate / palpitations / pericarditis and anxiety) by being made to travel to the office one day for the audit.

45. Plaintiff could accomplish all of her core functions and work duties as the Deputy Director of SIU 100% remotely, which included but were not limited to, case management and guidance, medical record and coding reviews, editing and proofing correspondence and documents.

46. On December 13, 2021, the Commissioner extended the vaccination mandate to employees in the private sector (hereinafter "private employee vaccination mandate").

47. On January 14, 2022, Defendants informed Plaintiff that she was not compliant with their COVID-19 vaccine mandate.

48. Plaintiff informed Defendants HR that Plaintiff was approved for remote work by

Plaintiff's manager Sean Mullen.

49. On or about January 14, 2022, Dr. Sanjiv Shah a medical director informed Sean Mullen, that Plaintiff and other non-vaccinated employees were on a list of non-compliance.

50. Plaintiff worked remotely from March 2020 until her suspension in February 2022.

51. Plaintiff submitted a medical accommodation request on February 10, 2022 to Defendants with medical documentation from Plaintiff doctors supporting her request through the Defendants HHC portal.

52. Plaintiff was unable to access the HHC portal to follow up on her requests.

53. Plaintiff also submitted a legal letter from an attorney on her behalf that provided Plaintiff's legal basis that Plaintiff's pericarditis disability was a qualifying disability under Defendants's own policy.

54. Plaintiff was denied a medical exemption on February 25, 2022, with no details or information provided for the reason of the denial of Plaintiff's request and suspended from work effective immediately.

55. After Plaintiff provided her medical accommodation requests the Defendants' EEO officer Kevin Marrazzo failed to communicate with Plaintiff further.

56. Plaintiff communicated with Defendants' Dept Chief Human Simran Kaur regarding the accommodation, Ms. Kaur told Plaintiff in October that she was all set to work from home and not on the EEO list, then in December 2021, changed her position and stated that Plaintiff could not work from home and did not have an accommodation.

57. Plaintiff sent Ms. Kaur several emails to determine the status of her accommodation because Ms. Kaur was unclear.

58.     Plaintiff also communicated with Ms. Kaur's deputy Saki Baxter regarding the accommodation, however Mr. Baxter did not respond to the requests, and sent Plaintiff to HR representative John Zabelny, who was unable to provide Plaintiff with assistance effectively and di not provide Plaintiff with requested information.

59.     Defendants failed to engage in the interactive process with Plaintiff regarding her request for reasonable accommodation to work from home.

60.     Plaintiff conferred with her union representative regarding her eligibility for a reasonable accommodation to the COVID-19 vaccine mandate, Plaintiff's union representative stated that, she verified that the New York Law Department considered pericarditis along with myocarditis as being one of two conditions that were eligible for medical accommodation to the Defendants' COIVD-19 vaccine mandate.

61.     On March 24, 2022, Mayor Adams enacted Executive Order No. 62, which provided blanket exemptions from the private employers' vaccine mandate for athletes, performers, and other artists (hereinafter "private exemption order" or "Mayor's exemption").

62.     On April 2, 2022, Defendants terminated Plaintiff's employment.

63.     Defendants sent Plaintiff the following letter from HHC's Deputy Chief Human Resource Officer, Simran Kaur,  on April 4, 2022 ("According to our records, you remain non-compliant with the COVID-19 vaccination requirement. You are therefore no longer an employee of New York City Health and Hospitals effective April 2, 2022.")

64.     Defendants had no equitable due process to determine Plaintiff's request for medical exemption to their COVID-19 vaccine mandate.

65.     In support of her request for medical accommodation, Plaintiff submitted comprehensive

medical paperwork of three independent physicians that recommended that Plaintiff continue to work remotely, and two physicians recommended that Plaintiff not take the COVID-19 vaccine due to possible exacerbation of Plaintiff's heart condition.

66.     Defendants acted arbitrarily and capriciously when they chose to deny Plaintiff's medical accommodation request, when based off the information they had could have easily granted it if they chose to do so.

67.     Upon information and belief, Defendants granted reasonable accommodations to younger employees but did not provide Plaintiff a reasonable accommodation due to her age.

68.     The Defendant HHC/City of New York treated athletes and performers better than Plaintiff by allowing a blanket exemption to the vaccine mandate.

69.     As described by Judge Ralph Porzio, referring to "a different decision for similarly situated people based on identical facts," in ordering the reinstatement of New York City sanitation workers: "There is nothing in the record to support the rationality of keeping a vaccination mandate for public employees, while vacating the mandate for private sector employees or creating a carveout for certain professions, like athletes, artists, and performers. *Garvey v City of New York*, 2022 NY Slip Op 22335 (Sup Ct, Richmond County, Porzio, J.).

70.     Defendants' COVID-19 vaccination mandate did not achieve its desired effect of protecting HHC's patients and employees because the vaccines do not stop the transmission or spread of the COVID-19 virus.

71.     Current guidance from the U.S. Centers for Disease Control treats vaccinated and unvaccinated alike, there are no mandated quarantine periods, unvaccinated and vaccinated individuals according to the CDC should wear masks indoors if COVID-19

infections are prevalent in the local area, among many other guidelines that show that while perhaps well-meaning, the HHC mandate could not serve its stated purpose, rather resulted in Plaintiff's inability to continue employment at HHC due to Defendants' hyperbolic and wholly unfounded fear of having Plaintiff in as an unvaccinated employee.

72.   Defendants were hostile to Plaintiff on the basis of her medical condition of pericarditis and Plaintiff's request for accommodation for an exemption to the COVID-19 vaccine mandate.

73.   It is clear by all objective measures, including medical literature, VAERS reports (Vaccine Adverse Effect Reporting System[4] a reporting system on vaccine injury managed by the U.S. Centers for Disease Control and Prevention (CDC) and the Food and Drug Administration (FDA))and increase in sudden health issues and sudden deaths and excess deaths associated with COVID-19 vaccine and unprecedented rise in heart conditions such as myocarditis, pericarditis, cardiomyopathy, stroke and blood clotting issues.

74.   In April 2021, the CDC had knowledge of an increased cases of myocarditis and pericarditis were reported in the United States after mRNA COVID-19 vaccination (Pfizer-BioNTech and Moderna). Data from multiple studies show a rare risk for myocarditis and/or pericarditis following receipt of mRNA COVID-19 vaccines.[5]

75.   Myocarditis is inflammation of the heart muscle, and pericarditis is inflammation of the lining outside the heart. In both cases, the body's immune system is causing inflammation in response to an infection or some other trigger. CDC has published case definitions for

---

[4] *See generally* https://vaers.hhs.gov/
[5] *See* (https://www.cdc.gov/vaccines/covid-19/clinical-considerations/myocarditis.html), last updated Sept. 29, 2022. Accessed February 16, 2023.

myocarditis and pericarditis.[6]

76.     According to the National Institute of Health (NIH) "Pericarditis is inflammation of the pericardium — the sac surrounding the heart. This sac is made of two thin layers of tissue with a small amount of fluid in between. The fluid keeps the layers from rubbing against each other and causing friction. The pericardium holds the heart in its position in the chest and protects it from infection."[7]

77.     By way of recent example, on or about January 13, 2023, the CDC issued the following update for vaccine injury related to stroke (ischemic strokes) following patients receiving the bivalent boosters in individuals 65 years and older "CDC & FDA Identify Preliminary COVID-19 Vaccine Safety Signal for Persons Aged 65 Years and Older." [8]

78.     The CDC stated "Following the availability and use of the updated (bivalent) COVID-19 vaccines, CDC's Vaccine Safety Datalink (VSD), a near real-time surveillance system, met the statistical criteria to prompt additional investigation into whether there was a safety concern for ischemic stroke in people ages 65 and older who received the Pfizer-BioNTech COVID-19 Vaccine, Bivalent. Rapid-response investigation of the signal in the VSD raised a question of whether people 65 and older who have received the Pfizer-BioNTech COVID-19 Vaccine, Bivalent were more likely to have an ischemic stroke in the 21 days following vaccination compared with days 22-42 following vaccination." *See Id.*

79.     It should be noted that on January 13, 2023, a New York State Supreme Court in

---

[6] *Id.*
[7] *See* (https://www.nhlbi.nih.gov/health/heart-inflammation/types). Accessed February 16, 2023.
[8] *See* (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/bivalent-boosters.html), last updated Jan. 13, 2023. Accessed February 13, 2023.

Onondaga, County struck down 10 N.Y.C.R.R. § 2.61 "Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61." when deciding an Article 78 petition challenge to brought by a group of impacted healthcare workers and medical doctors against the State of New York Department of Health Commissioner Mary Bassett, Governor Kathleen C. Hochul and The New York State Department of Health, for the August 26, 2021 "Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61].

80. The Court found that 10 N.Y.C.R.R. § 2.61 was unlawful, beyond the scope of the New York State Health Department's authority and arbitrary and capricious and otherwise not in accordance with the law. (*Medical Professionals for Informed Consent et al. v Bassett et al.* N.Y. Supreme Court, Onondaga County - Index No: 008575/2022, *Neri, J.*).

81. The Court in analyzing the validity of the final rule for the vaccine mandate [10 N.Y.C.R.R. § 2.61] agreed with the Petitioners that there was no **rational basis** for the mandate because even "***the New York State Health Department acknowledges that the mandated vaccine fails to accomplish its stated goal, i.e. prevent the spread of COVID-19***." (*Id.* at pg. 5)(emphasis in orginal).

82. The Court ordered that "10 N.Y.C.R.R. § 2.61 is *ultra vires*, preempted by state law, null and void and/or unenforceable, and awarding Petitioners reasonable attorney's fees, costs, and disbursements pursuant to CPLR § 81010, and any other applicable statutory, common law or equitable provision because any **defense to the validity of the mandate is without merit**." (*See Id.* at pg. 1-2).

83. The Court ruled that "the Mandate, 10 N.Y.C.R.R. § 2.61, is beyond the scope of Respondents' authority and is therefore null, void, and of no effect, and Respondents,

their agents, officers, and employees are prohibited from implementing or enforcing the Mandate." (*See Id.* at pg. 10).

84.     The Court noted that "In true Orwellian fashion, the Respondents [State of New York, Health Commissioner] acknowledge then-current COVID-19 shots do not prevent transmission."  (*See Id.* at pg. 11).

85.     The Court noted that New York State Department of Health's special expertise in regulation of public health was not utilized as "the COVID-19 shots do not prevent transmission." (*See Id.* at pg. 11).

86.     At the time of this filing, New York State is appealing the January 13, 2023 decision striking down vaccine mandate 10 N.Y.C.R.R. § 2.61 to the New York Appellate Division Fourth Department.

87.     Defendants' enforcement of the illegitimate vaccine mandate against Plaintiff in April 2022, as basis for her termination despite her medical accommodation request is unlawful.

88.     HHC as a "covered entity" under 10 N.Y.C.R.R. § 2.61.

89.     HHC is a top rated health system and upon information and belief had professionally trained and qualified experts within the organization that knew or should have known that the COVID-19 vaccines were medically ineffective and did not work as promoted (i.e. preventing contraction of and transmission of COVID-19)

90.     Presently, President Joseph R. Biden, Jr. has announced a planned end to the COVID-19 public health emergency pandemic authorizations in May 2023 in the United States.

91.     On February 6, 2023, the Mayor of the City of New York, Mayor Eric Adams announced that the City of New York will end its vaccine requirement for all City workers on

February 10, 2023.

92.   "Since November 1, 2021, City employees have been required to submit proof that they have received the primary series of the COVID-19 vaccine, per a series of Commissioner of Health Orders. The COVID-19 vaccine requirement applied to current city and DOE employees …. The Executive Orders 75 and 76 mandating that all new City employees be vaccinated is also rescinded."[9]

93.   HHC has failed to offer reinstatement of employment to Plaintiff or other similarly impacted workers who were terminated for non-compliance with the vaccine mandates despite their accommodation requests.

94.   COVID vaccines were intended to protect against the original strain.

95.   Vaccines do not provide protection against the current strain; which has mutated numerous times and will continue to do so.

96.    Infected individuals—whether vaccinated or not—transmit Virus to others.

97.   No current Vaccine can prevent the transmission of the COVID-19 virus or variant.

98.   Individuals with pericarditis like Plaintiff have an increased risk of vaccine adverse effects from the COVID-19 vaccine.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER ADA

99.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

100.  Plaintiff claims Defendant HHC violated Title I of the Americans with Disabilities Act of 1990

---

[9] See (https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf) Accessed, February 13, 2023.

(Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

101. ADA SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

102. Defendants violated the section cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of disabilities.

103. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION UNDER ADA

104. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

105. ADA SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

106. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR THE THIRD CAUSE OF ACTION DISCRIMINATION UNDER ADEA

107. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with

the same force and effect as if more fully set forth herein.

108. The ADEA in relevant part as follows: "§623 (a). Prohibition of age discrimination (a) Employer practices. It shall be unlawful for an employer— (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter."

109. Defendant the employer Defendants engaged in unlawful employment practices prohibited by the ADEA by allowing discrimination based on disability and causing a hostile work environment.

110. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AND FOR THE FOURTH CAUSE OF**
**ACTION RETALIATION UNDER**
**ADEA**

111.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

112.    The ADEA in relevant part as follows: "§623(d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation. It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such

individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.."

113.    The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## FOR VIOLATIONS OF 42 U.S.C. § 1983

114.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115.  All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

116.  All of the aforementioned acts deprived Plaintiff of her rights, privileges and immunities guaranteed to citizens of the United States by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

117.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as HHS / Metro Plus employees, with all the actual and/or apparent authority attendant thereto.

118.  Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

119.  The acts complained of deprived Plaintiff of her rights to be free of disability and age discrimination and to have equal protection under the law.

120.  Defendants' Mayoral exemption favored non-public employment and granted exemptions to athletes and performers and treated Plaintiff differently.

121. Defendants deprived Plaintiff equal protection under the law based on her disability and age.

122. Plaintiff has suffered damages as a result of said violations.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER 42 U.S.C. § 1983**
**AND THE FIRST AMENDMENT**

123. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

124. Plaintiff engaged in protected activities when she complained that she felt that she was being mistreated and not believed about her diagnosis of pericarditis as a qualifying disability eligible for accommodation in the form of an exemption to the vaccine mandate.

125. As described herein, Plaintiff experienced retaliation immediately after she submitted medical documentation to Defendants in support of her request for medical accommodation to the vaccine mandate.

126. Plaintiff was terminated after engaging in protected activity.

127. By the acts and practices above, the Defendants retaliated against Plaintiff for engaging in protected activities, in violation of 1983 and the First Amendment.

128. Defendants' actions described above directly and proximately have caused and continue to cause Plaintiff to suffer damages.

**AS A SEVENTH CAUSE OF ACTION**
**FOR VIOLATIONS OF 42 U.S.C. § 1983**
**MONELL LIABILITY**

129. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

130. Defendants officially adopted or promulgated policies that were clearly unconstitutional thereby subjecting the Defendants to municipal liability under § 1983.

131. At all relevant times the Defendants violated Sec. 1983 and the U.S. Constitution when they failed to engage in the interactive process as to Plaintiff's request for medical accommodation from the vaccine mandate, did not provide a reason for Plaintiff's accommodation being revoked despite approval to work from home, Plaintiff's complaints about not being updated as to the process for the accommodation requests and not having clear guidance or directives from Defendants on the status of her accommodation and ability to continue to work remotely and then retaliated against 15 days after submitting medical documentation for her request and inquiring as to the status, Plaintiff was then harassed, denied the accommodation and terminated.

132. Also, the Defendants' policy to accommodate the athletes and entertainers in March 2022 with a blanket exemption was an officially adopted policy of the City of New York and had a direct disparate impact on Plaintiff due to the denial of Plaintiff's Equal Protection Constitutional rights upon her termination in April 2022.

133. At all times alleged herein, the individually named employees of the Defendants as described herein above possessed final decision making authority and were policymakers as defined by 1983.

134. Defendants failed to train their employees with respect to processing and handling of Plaintiff's medical accommodation requests.

135. As described herein above, Defendants informed Plaintiff she could work from home, indeed, Plaintiff worked from home from the beginning of the pandemic in March 2020 through April 2022, during that time, Defendants instituted the employee vaccination policy, and sent notices to all employees including Plaintiff to be vaccinated by November 1, 2022, Plaintiff inquired with HR, her department boss, supervisor, the EEO officer, and her union regarding the status her ability to work from home, Plaintiff was able to work from home even after the November

1, 2022 implementation of the vaccine mandate, and only went to the office (after supplying a negative COVID test) in person, on one occasion during an audit, Plaintiff was then notified in or around January 14, 2022, that she was on the EEO list and then needed to submit documentation for an accommodation, Plaintiff sought an accommodation to continue working from home, and for an exemption to the vaccination mandate due to her pericarditis, Defendants failed to accommodate Plaintiff, suspended her 15 days after submitting her supporting medical documentation through the portal for her requests for accommodation.

136.  Defendants failed to interact with Plaintiff and did not provide a reason why she was suspended, despite her pending request, and did not receive a reason why her accommodation was denied.

137.  Plaintiff then received her termination letter on April 4, 2022, terminating her employment for non-compliance with Defendants' vaccination policy with no mention of Plaintiff's accommodation request or reason for denial of her accommodation request.

138.  Defendants' actions described above directly and proximately have caused and continue to cause Plaintiff to suffer damages.

<u>**AS AND FOR THE EIGHTH CAUSE OF ACTION**</u>
<u>**FOR VIOLATION OF THE FIFTH AND FOURTEENTH AMENDEMENT'S EQUAL PROTECTION CLAUSE**</u>

139.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

140.   Defendant HHC and New York City, via the Mayor and Health Commissioner's orders regarding mandatory vaccination for all public employees and providing the blanket Mayor's exemption for athletes and performers denied Plaintiff equal protection under the law.

141.  Vaccinated employees were treated better than non-vaccinated employees.

142. At or around the same time that Plaintiff was required to submit information regarding her vaccine status, the Mayor provided athletes and performers open exemption to the vaccine mandate.

143. At all relevant times Defendant HHC's actions were taken under color of state law.

144. Defendant HHC targeted a class of persons with their vaccine mandate.

145. Defendant HHC/New York City's choice not to accept or engage in an interactive process with Plaintiff regarding her medical accommodation requests, but to grant medical exemption requests for others with the same condition and granted blanket exemption to athletes and performers via the Mayor's exemption violated Plaintiff's rights under the Constitution and ADA violates the Equal Protection Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

146. By failing to consider Plaintiff's reasonable medical accommodations, Defendants have deprived Plaintiff of their constitutionally protected rights to equal protection.

147.  Defendants have engaged in overt acts to deprive Plaintiff of her civil rights by failing to engage in the interactive process and terminating Plaintiff's employment.

148. Classifications that "impinge upon the exercise of a fundamental right" are "presumptively invidious" and subject to strict scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

149. "A statutory classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right." *Nordlinger v Hahn,* 505 U.S. 1, 10 (1992).

150. Defendants' actions in denying the Plaintiff's medical exemption and terminating her employment deprive Plaintiff of the equal protection of the laws guaranteed by the United States Constitution.

151. Plaintiff has suffered damages as a result.

## AS AND FOR THE NINTH CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §6-7

152. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

153. Under NY Constitution Article I, §6 the state may not infringe on certain enumerated rights.

154. Under NY Constitution Article I, §7 no person may be deprived of life, liberty, or property without due process of the law.

155. Defendants violated Plaintiff's right to a reasonable medical accommodation and violated NYSHRL by discriminating on the basis of medical when they denied Plaintiff's reasonable medical accommodation request.

156. Plaintff had a property interest in continued employment. Respondents violated Plaintiff's substantive due process rights.

157. Defendants' enforcement of vaccine mandate constitutes a deprivation of property under due process of law.

158. Being vaccinated does not prevent an individual from contracting or transmitting Covid-19.

159. Defendants denied Plaintiff her rights under NY Constitution Article I, §7.

## AS AND FOR THE TENTH CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §11 FOR
## EQUAL PROTECTION UNDER THE LAW

160. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

161. Under the NY Constitution Article 1, §11 "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.

162. Defendants violated Plaintiff's right to reasonable medical accommodation and violated NYSHRL when they denied Plaintiff's medical accommodation request as per the Defendants' vaccine mandate.

163. Plaintiff as in individual seeking a medical accommodation in the form of an exemption to the COVID-19 vaccine mandate was treated differently than other individuals seeking medical exemption to the COVID-19 vaccine mandate and provided was treated worse than athletes and performers under the Mayor's exemption.

164. Being vaccinated does not prevent an individual from contracting or transmitting Covid-19.

165.

166. Defendants denied Plaintiff her rights for equal protection under NY Constitution Article I, §11.

<u>**AS AND FOR THE ELEVENTH CAUSE OF**</u>
<u>**ACTION DISCRIMINATION UNDER**</u>
<u>**NEW YORK STATE HUMAN RIGHTS LAW**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>

167. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

168. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

169. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff based on disability, requests for reasonable medical accommodation, and prior complaints.

170.  Plaintiff hereby makes a claim against all Defendants under all of the applicable paragraphs of Executive Law Section 296.

171.      Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**AS AND FOR THE TWELFTH CAUSE OF ACTION**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(AGAINST ALL DEFENDANTS)**

172.      Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

173.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

174.  Defendants engaged in an unlawful discriminatory practice by creating a hostile work environment based on disability and wrongfully retaliating against Plaintiff.

**AS AND FOR THE THIRTEENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(AGAINST ALL DEFENDANTS)**

175.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

176.  New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

177.  Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS AND FOR THE FOURTEENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

178. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

179. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

180. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's disability and requests for accommodation.

181. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

182. Defendants violated the above section as set forth herein.

## AS FOR A FIFTEENTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

183. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

184. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

185. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

186. Defendants violated the above section as set forth herein.

## AS AND FOR A SIXTTEENTH CAUSE OF ACTION FOR
## AIDING AND ABETTING UNDER
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

187. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

188. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

189. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

190. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

191. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

192. Defendants violated the above section as set forth herein.

## DEMAND FOR A JURY TRIAL

193. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and inwillful violation of the aforementioned federal; state; city laws;

B. Awarding Plaintiff compensatory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff costs and disbursements incurred in connection with this action,including reasonable attorneys' fees, expert witness fees, and other costs;

E. Pre-judgment and post-judgment interest, as provided by law; and

F.      Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: New York, New York
        February 17, 2023

                        Respectfully submitted,


                        By: *Christopher J. Berlingieri*
                        CHRISTOPHER J. BERLINGIERI, ESQ. (CB1988)
                        BERLINGIERI LAW, PLLC
                        Attorney for Plaintiff
                        244 Fifth Avenue, Suite F276
                        New York, New York 10001
                        Tel.:    (347) 766-5185
                        Fax:     (914) 730-1044
                        Email: cjb@nyctlaw.com

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

**Issued On: 10/28/2022**
**Charge No: 520-2022-03924**

**To:** Linda Osborn
17  Villard Ave.
Hastings On Hudson, NY 10706

EEOC Representative and email:    Christiana Doriety,
Federal Investigator
christiana.doriety@eeoc.gov

---

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Timothy Riera
10/28/2022

Timothy Riera,
Acting District Director

**Cc:**
Blanche Greenfield
NYC Health & Hospitals Corp.
Office of Legal Affairs 125 Worth ST., Suite 527
New York, NY 10013

Christopher J Berlingieri
Berlingieri Law, PLLC
244 Fifth Avenue, Suite F276
New York, NY 10001

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2022-03924 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at [http://www.eeoc.gov/laws/types/disability_regulations.cfm](http://www.eeoc.gov/laws/types/disability_regulations.cfm).

# EXHIBIT B

**From:** VANESSA GUEST
**Sent:** Thursday, February 9, 2023 1:36 PM
**To:** Christopher Berlingieri
**Cc:** CHRISTIANA DORIETY; ARLEAN NIETO
**Subject:** Linda Osborn NRTS

Good afternoon,

Please see the attached right to sue was made available October 28, 2022 on the public portal.

Best

**From:** Christopher Berlingieri
**Sent:** Friday, February 10, 2023 12:29 PM
**To:** Vanessa Guest
**Subject:** EEOC sent notice of upload of NRTS to wrong email. Sent to my other client Tracy Hunihan
Fwd: Document Added to EEOC Charge 520-2022-03924

Dear Ms. Guest:

It appears that the EEOC sent the below notification addressed to my name but sent to my other client Tracy Hunihan  (who had a charge with your office tracy.hunihan@gmail.com) instead of my email address cjb@nyctlaw.com and the proper Charging Party Linda Osborn. She however never had access to the portal. She just became aware that the EEOC issued the NRTS today from my disclosure after I received it yesterday.

So I wanted to provide you this proof that I never received it because it went to tracy.hunihan@gmail.com. Instead of my email.

Had I received this notification I would have inquired for a copy to be emailed or mailed.  Likewise I never got it in the mail and never had this charge listed on my cases in the EEOC portal. Charging party did not have access to the portal.


Regards,

Christopher J. Berlingieri, Esq.
Berlingieri Law, PLLC
244 Fifth Avenue, Suite F276
New York, NY 10001
T: 347.766.5185
F: 914.730.1044
www.nyctlaw.com

Begin forwarded message:

> **From:** Lin Osborn █████████████
> **Date:** February 10, 2023 at 12:17:35 PM EST
> **To:** Christopher Berlingieri <cjb@nyctlaw.com>
> **Subject: Fwd: Document Added to EEOC Charge 520-2022-03924**
>
>
> for you now
>
> ---------- Forwarded message ---------
> From: **EEOC** <no-reply@service.eeoc.gov>
> Date: Mon, Oct 31, 2022 at 10:37 AM
> Subject: Document Added to EEOC Charge 520-2022-03924
> To: Linda Osborn ███████████████████, Christopher J Berlingieri
> <tracy.hunihan@gmail.com>

 **U.S. Equal Employment Opportunity Commission**

A new document was added to EEOC Charge No. 520-2022-03924, Linda Osborn v. NEW YORK CITY HEALTH & HOSPITALS CORP. . To view it, sign-in to the EEOC Public Portal.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (929) 506-5270 and destroy all copies of the original message and attachments.*

**From:** Tracy Hunihan
**Sent:** Friday, February 10, 2023 12:34 PM
**To:** Christopher Berlingieri
**Subject:** Fwd: Document Added to EEOC Charge 520-2022-03924


---------- Forwarded message ---------
From: **EEOC** <no-reply@service.eeoc.gov>
Date: Mon, Oct 31, 2022, 10:37 AM
Subject: Document Added to EEOC Charge 520-2022-03924
To: Linda Osborn <████████████>, Christopher J Berlingieri <tracy.hunihan@gmail.com>



**U.S. Equal Employment Opportunity Commission**

A new document was added to EEOC Charge No. 520-2022-03924, Linda Osborn v. NEW YORK CITY HEALTH & HOSPITALS CORP. . To view it, sign-in to the EEOC Public Portal.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (929) 506-5270 and destroy all copies of the original message and attachments.*

**From:** Lin Osborn
**Sent:** Friday, February 10, 2023 12:17 PM
**To:** Christopher Berlingieri
**Subject:** Fwd: Document Added to EEOC Charge 520-2022-03924

for you now

---------- Forwarded message ---------
From: **EEOC** <no-reply@service.eeoc.gov>
Date: Mon, Oct 31, 2022 at 10:37 AM
Subject: Document Added to EEOC Charge 520-2022-03924
To: Linda Osborn <lolinosborn@gmail.com>, Christopher J Berlingieri <tracy.hunihan@gmail.com>

        **U.S. Equal Employment Opportunity Commission**

A new document was added to EEOC Charge No. 520-2022-03924, Linda Osborn v. NEW YORK CITY
HEALTH & HOSPITALS CORP. . To view it, sign-in to the EEOC Public Portal.

*Notice of Confidentiality: This email may contain privileged and confidential information, including
information protected by federal and state privacy laws. It is intended only for the use of the
person(s) named above. If you are not the intended recipient, you are hereby notified that any
review, dissemination, distribution, or duplication of this communication is strictly prohibited and
may be unlawful. If you are not the intended recipient, please contact (929) 506-5270 and destroy all
copies of the original message and attachments.*